Davy CADY, Plaintiff–Appellant,

v.

VILLAGE OF MCCOOK, et al., Defendants–Appellees.

No. 02–2579.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 16, 2002.*

Decided Jan. 13, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before FAIRCHILD, EVANS, and WILLIAMS, Circuit Judges.

### ORDER

Davy Cady brought suit in district court, alleging a variety of federal and state claims, including several constitutional violations cognizable under 42 U.S.C. § 1983, arising out of an encounter with two police officers. The district court granted summary judgment for the defendants, and we affirm.

Following a 20–minute encounter with police officers while jogging in McCook, Illinois, Cady sued the Village of McCook, three McCook police officers, the mayor of McCook, and the McCook Board of Trustees alleging 14 counts, including unlawful restraint, unauthorized practice of law, negligent infliction of emotional distress, the tort of outrage, official misconduct, conspiracy, and violations of his free exercise of religion, freedom from unreasonable seizure, and privacy rights. The defendants subsequently moved for summary judgment. The record includes the defendants' Notices of Filing for both their summary judgment papers and Local Rule 56.2 Notice to *Pro Se* Litigants Opposing Summary Judgment. Two weeks later, Cady filed an unsworn reply to the defendants' motion for summary judgment. Approximately a month after filing his reply, and after the filing deadline set by the court had already passed, Cady also moved to file an affidavit in response to summary judgment, citing being "out of town for much of the end of 2001" as the reason for filing the affidavit late, but the court declined to consider his affidavit.

The court ultimately granted summary judgment for the defendants, concluding that although the officers subjected Cady to an investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the officers' interest in Cady's well-being constituted a reasonable basis on which to approach him, and that the duration and nature of the encounter were reasonable. Because no federal issues remained in the case after summary judgment on Cady's constitutional claims, the court relinquished jurisdiction over his state law claims.

First, we note that the district court judge may have been more generous to Cady than he needed to be in considering the facts of the encounter. The judge drew the facts from both the defendants' summary judgment materials and all of the allegations in Cady's complaint. But because Cady did not file any timely, sworn materials in response to the defendants' summary judgment motion, the judge was required to consider only facts included in the defendants' summary judgment materials and allegations in the complaint that the defendants had admitted. *See Hedrich v. Bd. of Regents of Univ. of Wis. System,* 274 F.3d 1174, 1178 (7th Cir.2001) ("[I]t is common to punish a party's failure to comply with summary judgment rules by ignoring that party's unsupported factual allegations and accepting as true those of the opposing party.").

In any case, the judge considered the following facts. At approximately 8 p.m. on a summer evening in 2000, Village of McCook Officers Strnad and Tokarski received a dispatch, arising from phone calls from local residents, that a barefoot man, seemingly all wet, was talking to himself while walking along their street. The officers arrived in separate cars, found Cady jogging barefoot along a grassy area, and pulled their cars across his intended jogging path. Cady denied to the district court that he was all wet and talking to himself, but conceded that he may have been perspiring heavily, may have doused himself with water to cool down, or may have been practicing a foreign language or singing a hymn.

The officers got out of their cars, approached Cady, and started a discussion with him. The officers asked Cady what he was doing and requested identification from him. Cady responded to the officers that he was jogging and stretching, that he did not have any identification, that he did not want to identify himself, and that the officers did not have probable cause or reasonable suspicion to detain him. The officers told Cady that they were merely investigating calls about a barefoot man, inquired into his well-being, and assured him that he was not under arrest and was free to leave. Cady then engaged the officers in a discussion about religion and his constitutional rights. Cady also alleged in his complaint that the officers warned him that he could avoid future "problems" if he were to jog on the other side of the street, which, according to Cady, is located in another municipality.

Approximately 20 minutes into the encounter, Cady told the officers that he would be going on his way without identifying himself and began to jog away in the direction from which he came. Although the officers pressed Cady one last time to identify himself, they did not attempt to hinder his leaving in any way. At no point did the officers brandish their guns or touch Cady. Cady alleged in his complaint that following the encounter, he was "so outraged, emotionally distraught, and discouraged" that he stopped jogging altogether. He further alleged that as a result, he gained considerable body weight, became depressed, lost self-esteem and much of his social life, and had a hard time finding work.

Cady timely appealed and challenges the grant of summary judgment on his unreasonable seizure, equal protection, and freedom of religion claims and asserts, for the first time on appeal, that he never received the required notice for *pro se* litigants opposing summary judgment. We review the grant of summary judgment *de novo. Zentmyer v. Kendall County, Ill.,* 220 F.3d 805, 810 (7th Cir.2000).

■ For his unreasonable seizure claim, Cady argues that the district court erred in concluding that the officers had a rea-

sonable basis on which to approach him and that his actions, appearance, and calls from residents did not constitute enough suspicion for a permissible *Terry*-stop. We agree with the district court, however, that permissible encounters between police officers and citizens are not limited to situations involving possible criminal activity, but also include situations in which persons may need help or are in danger of harming themselves or others. *See, e.g., Terry,* 392 U.S. at 14 n. 9 (noting that police encounters are often initiated for reasons other than prosecuting crime, such as helping an intoxicated person find his way home). Here, the officers received reports of a man walking wet and barefoot through a neighborhood while talking to himself. It is not a stretch to imagine that such a person could have needed medical assistance or could have been under the influence of drugs or alcohol or suffering from a mental illness. The officers located Cady, who matched the description in the reports, approached him, inquired into his identity and well-being, and let him leave without hindering his departure in any way. Although a 20–minute encounter strikes us as lengthy for such an inquiry, the duration of the encounter is reasonable in light of the fact that Cady engaged the officers in a discussion about religion and his rights. *See United States v. Sharpe,* 470 U.S. 675, 687–88, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (holding that 20–minute stop was not unreasonable where the suspect's actions contributed to delay about which he complained); *United States v. Robinson,* 30 F.3d 774, 784 (7th Cir.1994) (holding that 20–minute detention was not unreasonable where suspect gave "misleading answers"). Because the possibility that a citizen is endangered is a proper basis for minimal interference by police officers, summary judgment on this claim was proper.

■ Cady also challenges summary judgment on his equal protection claim, citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), and arguing that the officers unlawfully harassed him, but not other joggers or walkers, because he was barefoot. *Olech* held that the plaintiffs stated an equal protection claim where they alleged that the village's demand that they provide a different size easement than other residents was "irrational and wholly arbitrary." *Id.* at 565. In *Hilton v. City of Wheeling,* 209 F.3d 1005, 1008 (7th Cir. 2000), we interpreted *Olech* to require the plaintiff to present evidence that "the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." Here, Cady did not produce any evidence showing that the officers stopped him because of personal animus rather than for the reasons the officers gave–that they were responding to residents' telephone calls and were concerned about Cady's well-being. Therefore, the district court properly granted summary judgment on this claim, as well.

In challenging summary judgment on his freedom of religion claim, Cady asserts that his encounter with the police officers, and particularly the officers' comment about jogging on the other side of the road, has chilled him from jogging barefoot, thus preventing him from exercising his religious convictions, which he describes as "the maximum possible practice of barefootedness." But as the district court correctly noted, Cady never pointed to any legal authority to substantiate his claim that such an encounter could constitute an impermissible restraint on his freedom of religion. His failure to develop this claim renders it waived. *See Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir.2001).

Finally, Cady argues that the defendants violated Local Rule 56.2 by not properly mailing him the required notice for *pro se* litigants explaining how to oppose summary judgment and that, consequently, he found out too late that he should submit an affidavit responding to their summary judgment motion. LR56.2 (the companion to LR56.1, which describes what materials parties moving for and opposing summary judgment should provide to the court) requires moving parties to serve and file adequate notice upon any *pro se* non-movant that explains how to oppose summary judgment with various materials, including affidavits.

Cady's argument is rather curious for several reasons. First, he never alleged in the district court that he did not receive the notice–rather, he attempted to file his affidavit late by citing his travels away from Chicago. Furthermore, given that the record includes the defendants' Notices of Filing, there is no indication that Cady did not receive the notice, other than his own allegation. And Cady contends that even if the defendants did send the notice to him, they violated LR56.2 by not mentioning the summary judgment papers and the *pro se* notice in the same Notice of Filing. But we cannot find any explicit requirement that movants follow this particular procedure. Therefore, the district court, given the record before it, did not abuse its discretion in declining to consider the affidavit that Cady filed late.

AFFIRMED.