In the

# United States Court of Appeals

### For the Seventh Circuit

No. 04-3518

DAVY CADY,

*Plaintiff-Appellant,*

*v.*

MICHAEL F. SHEAHAN, Cook County Sheriff,
WILLIAM G. BARBAT, Sheriff's sergeant,
WILLIAM MARGALUS, Sheriff's sergeant,
GONZALO LUCIO, Sheriff's deputy, and
WILLIAM JACOBY, Sheriff's deputy,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 5989—**Michael T. Mason**, *Magistrate Judge.*

ARGUED SEPTEMBER 11, 2006—DECIDED NOVEMBER 3, 2006

Before RIPPLE, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* At issue in this case are claims brought by Davy Cady pursuant to 42 U.S.C. § 1983 against Cook County, Illinois, Sheriff Michael Sheahan and four other sheriff's officers, Gonzolo Lucio, William Barbat, William Jacoby, and William Margalus (collectively "officers"), alleging violations of his civil and constitutional rights. The claims arise from an encounter that took place between Cady and the officers outside a Cook County

courthouse on August 22, 2001. After completion of discovery, the district court granted summary judgment for the officers. For the reasons set forth below, we affirm.

## I. Background

On the morning of August 22, 2001, Cady arrived at a Cook County courthouse in Bridgeview, Illinois sometime between 6:15 and 6:30 a.m. Cady knew that the courthouse did not open until 8:30 a.m., but was attempting to serve a summons on a Cook County Sheriff's police officer during a shift change.[1] Cady was dressed in dirty, wrinkled clothing, wore a beard, carried a briefcase with him, and emanated a strong body odor. Cady walked back and forth between the outer and inner sidewalks on the east side of the courthouse, the latter of which was obscured by bushes and was not often used by the public. Defendant Lucio approached Cady at approximately 6:40 a.m.[2] Officer Lucio asked Cady why he was at the courthouse, to which Cady responded that he was a federal process server. Officer Lucio requested identification, but Cady refused. The conversation proceeded with officer Lucio under the impression that Cady was claiming to be a federal officer, Cady refusing to present identification, and Cady engaging officer Lucio in a dialog about whether individuals, especially

---

[1] Cady was attempting to serve process on behalf of a Mr. Richard Wos. That case eventually reached this court. *Wos v. Sheahan*, 57 Fed. App'x. 694 (7th Cir. 2002) (affirming district court's dismissal on the pleadings of § 1983 claims arising from an arrest and vehicle impoundment).

[2] Officer Lucio was alerted by court services officers that a suspicious individual was found lurking in the bushes outside of the courthouse, and was refusing to cooperate with court services officers' questioning.

servers of federal process, are required to carry identification.

Cady requested to speak with a supervisor, and officer Lucio summoned sergeant Barbat who also asked Cady what his business was at the courthouse and to present identification. The encounter continued in the same evasive manner that it had with officer Lucio, with Cady inquiring as to whether sergeant Barbat was making a *Terry* stop, and if so, what crime he suspected Cady was committing, was about to commit, or had committed.[3] Cady further stated that he would not reveal his identity unless he was assured that it would not be used against him in a future criminal prosecution. During the course of this encounter, defendants officers Margalus and Jacoby arrived upon the scene and remained there to ensure the safety of all involved.

Throughout the encounter, Cady reached into his briefcase to reference his Sullivan's Law Directory, and point out certain Federal Rules of Civil Procedure to the officers. After Cady had reached into his briefcase several times, one of the officers present took the briefcase from Cady, placed it on the hood of a squad car, and, along with another officer, searched the contents for weapons. A Sullivan's Law Directory, a Bible, an address book, and a pen were found in the briefcase; no weapons were found. The officers closed the briefcase and placed it in a squad car until the end of the encounter. Cady was also frisked at this time, and no weapons were discovered.

The officers, still under the impression that Cady was claiming to be a federal officer, ran the name that appeared in Cady's Bible in their squad car computer. Finding that a name was not enough to identify Cady, the officers pressed Cady for more information. Officer Margalus stated that if

---

[3] Cady's questions mirrored the language of 725 ILCS 5/107-14.

Cady did not comply, he could be arrested for obstructing a police officer. Officer Jacoby took out his handcuffs and told Cady to put his hands behind his back, but never actually 'cuffed Cady. Cady gave his full name and date of birth. The officers found that there were no outstanding warrants for his arrest. Cady's briefcase was returned to him and he was sent off with information regarding the correct procedures for serving a summons on a Cook County Sheriff's officer. The entire incident lasted between twenty and thirty minutes.

Cady filed his *pro se* complaint on December 20, 2002, including federal claims under 42 U.S.C. § 1983 alleging false imprisonment, false arrest, unlawful search and seizure, a *Monell* claim against Sheriff Sheahan in his official capacity and state law claims for negligent and intentional infliction of emotional distress. After nearly two years of discovery disputes and borderline frivolous motions, the parties made cross motions for summary judgment. The officers correctly pointed out that Cady had not complied with Northern District of Illinois Local Rule 56.1 in his statement of material facts,[4] and the district court struck Cady's statement and ordered him to submit a statement in compliance with Rule 56.1. Cady's resubmitted statement of material facts also did not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture. In light of this failure to comply with the Local Rules, the district court exercised its discretion to use the officers' statement of material facts in deciding whether, and to which party, to grant summary judgment. The district court

---

[4] Illinois Local Rule 56.1 requires that a party moving for summary judgment serve and file a statement of material facts to which the party contends there is no genuine issue. The statement must include specific references to the record.

granted summary judgment to the defendants on all claims.[5]

## II.  Analysis

Cady presents three issues on appeal: (1) whether his Fourth Amendment rights were violated when the officers searched the contents of his briefcase; (2) whether the officers had reasonable and articulable suspicion to initiate an investigatory stop; and (3) whether the officers exceeded the permissible scope and duration of the investigatory stop.

### A.  Standard of Review

We review a district court's summary judgment ruling *de novo*, viewing the facts in the light most favorable to the non-moving party. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Summary judgment is appropriate when, based upon the record, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When the non-moving party fails to establish 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' Rule 56(c) mandates entry of summary judgment against that party because 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Massey*, 457 F.3d at 716 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

---

[5] Cady brought a *Monell* claim against sheriff Sheahan in his official capacity and also sued him individually, alleging that he failed to discipline the officers and adequately respond to Cady's complaints. In this court Cady has not argued that summary judgment was improper as to his *Monell* claim.

"A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed." *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005). Likewise, the Supreme Court has made clear that even *pro se* litigants must follow rules of civil procedure. *See McNeil v. United States*, 508 U.S. 106, 113 (1980). Given that Cady had the opportunity to resubmit a statement that complied with Rule 56.1, and that Cady is an extremely experienced *pro se* litigant,[6] the district court did not abuse its discretion in adopting the officers' version of events. Thus, we use the officers' statement of material facts in determining whether summary judgment is proper, but still view those facts in the light most favorable to Cady. *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003).

## B. Protective Search

Cady alleges that the officers violated his Fourth Amendment right to be free from unlawful searches when they

---

[6] Indeed, Cady has filed six other unsuccessful *pro se* actions in the Northern District of Illinois and three unsuccessful appeals to the Seventh Circuit, including previous problems with Local Rule 56.1. *See Cady v. Miss Paige, Ltd.*, 02 C 4867, 2004 WL 1144044 (N.D. Ill. Apr. 30, 2004); *Cady v. South Suburban Coll.*, 310 F. Supp. 2d 997 (N.D. Ill. 2004), *aff'd*, 152 F. App'x 531 (7th Cir. 2005) (unpublished order), cert. denied No. 05-10758, 2006 WL 1209191 (Oct. 2, 2006); *Cady v. Cook County, Illinois*, 02 C 8333, 2003 WL 21360898 (N.D. Ill. June 11, 2003); *Cady v. Dacosta*, 02 C 3188 (N.D. Ill. June 12, 2002); *Cady v. Vill. of McCook*, 01 C 4375, 2002 WL 999429 (N.D. Ill. May 14, 2002), *aff'd*, 57 F. App'x 261 (7th Cir. 2003) (unpublished order); *Cady v. City of Chicago*, 01 C 5152 (N.D. Ill. April 22, 2002), *aff'd*, 56 F. App'x 61 (7th Cir. 2003) (unpublished order), cert. denied 540 U.S. 954 (2003).

examined the contents of his briefcase without his consent. In *Terry v. Ohio*, the Supreme Court noted American criminals' "long tradition of armed violence." 392 U.S. 1, 23 & n.21 (1968) (noting that fifty-seven officers were killed in the line of duty in 1966). This is no less true today than it was in 1968.[7] The *Terry* Court explained that the protective search for weapons is a vital tool to serve the "immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Id.* at 23.

In the course of a *Terry* stop, an officer may conduct a protective search for weapons of an individual's person, and area within his control, if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27; *see Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983). The officers in this case were faced with an individual who was lurking outside a courthouse well before it opened to the public, was shabbily dressed, had not showered, carried a briefcase, and claimed to be serving federal process on a Sheriff's officer. Cady was evasive in response to the officers' questions, and repeatedly reached into his briefcase. Under the circumstances, a reasonably prudent officer would be concerned for the safety of the officers and

---

[7] In 2001, the year of Cady's encounter outside of the courthouse, 142 officers were feloniously killed in the line of duty. The events of September 11 were responsible for claiming seventy-two of those officers' lives, leaving seventy additional officers killed in the line of duty by violent assailants (compared with the fifty-seven the *Terry* Court noted in 1966). Federal Bureau of Investigation, Uniform Crime Reports for the United States—2001, 3.

civilians in the area, as well as for Cady himself. The district court properly determined that a protective search for weapons of both Cady's person and briefcase was warranted and that no issue of material fact was presented. Even if the officers first obtained Cady's name from his Bible, as he contends, they were not required to ignore what they saw during a proper protective search for weapons. *Long*, 463 U.S. at 1050. *Cf. Minnesota v. Dickerson*, 508 U.S. 366, 379 (1993) (distinguishing the manipulation of contraband on suspect's person in violation of *Terry* from viewing contraband in plain sight which is proper under *Terry*).

## C. *Reasonable Suspicion to Initiate* Terry *Stop*

Cady argues that the officers did not have reasonable articulable suspicion to initiate a *Terry* stop. An officer is warranted in effectuating a *Terry* stop when he can "point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant an intrusion." *Terry*, 392 U.S. at 21. Cady points to *Brown v. Texas*, but his reliance is misplaced; in *Brown* the individuals were stopped because they were in a high crime area, and the officers had no specified reason to believe they were engaging in criminal activity or were armed. 443 U.S. 47, 48-49, 52 (1979). Such is not the case here, where the officers had numerous specific facts creating reasonable suspicion.

Cady also relies on several cases pointing out that a dirty, disheveled appearance alone does not amount to reasonable suspicion. *See, e.g., United States v. Sholola*, 124 F.3d 803 (7th Cir. 1997); *United States v. Smith*, 263 F.3d 571 (6th Cir. 2001). But the officers in this case did not rely on Cady's appearance alone; they also relied on his location, the time of day, and the manner of his movements amongst the bushes outside the courthouse. As we noted in *Braun v.*

*Baldwin*, courthouses present heightened security concerns, particularly those where criminal defendants are tried and ongoing domestic disputes are resolved. 346 F.3d 761, 765 (7th Cir. 2003). These are factors an officer may properly consider when determining whether a *Terry* stop is warranted.

Cady points out that an officer "is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries." *Sibron v. New York*, 392 U.S. 40, 64 (1968). This is correct; but, an officer is entitled to conduct a limited stop and related protective search for weapons of an individual who is lurking amongst the bushes outside a courthouse two hours before it opens, is shabbily dressed, carrying a briefcase, claims to be a federal process server, refuses to provide identification upon request, and is evasive in response to police questioning.

### D. *Scope of* Terry *Stop*

We turn now to Cady's final argument: that the permissible scope and duration of the *Terry* stop were exceeded. The officers' questioning regarding Cady's identity and purpose were clearly appropriate. While Cady argues that his identity could not have shed any light on the legality of his conduct that morning, his identity could have helped the officers resolve the situation in a variety of ways. At least one officer believed that Cady may have been at the courthouse for a community service program. Additionally, Cady could have been a litigant at the courthouse, which could have heightened or alleviated the officers' concerns. Finally, Cady could have been an individual with a record of mental illness who was presenting a danger to himself and others. *See Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 186 (2004).

In *Hiibel*, the Supreme Court held that states are permitted to statutorily authorize the demand for identification

during a *Terry* stop, and to require compliance with such demand.[8] 542 U.S. at 188. Cady's identity was relevant to the purpose of the stop and the officers did not exceed the scope of the stop by requesting identification.

Nor did the duration of the stop exceed the limited confines set forth in *Terry*. Cady's contribution to the length of the stop is dispositive of this issue. When delay is attributable to the evasive actions of a suspect, the police do not exceed the permissible duration of an investigatory stop. *United States v. Sharpe*, 470 U.S. 675, 687-88 (1985). Cady's refusal to provide identification aside, he engaged the officers in a dialog concerning the legal significance of Supreme Court precedents and the Federal Rules of Civil Procedure, asked to speak with a supervisor, failed to correct the officers' obvious belief that he was claiming to be a federal agent,[9] and threatened to sue the officers. The total length of the stop was between twenty and thirty minutes. The officers worked diligently to resolve the situation, and released Cady as soon as they determined that he was not a threat to safety at the courthouse. The permissible scope and duration of the investigative stop were not exceeded.

---

[8] Illinois has such a statute permitting officers to demand identification during a temporary stop. 725 ILCS 5/107-14 (2006). Under *Hiibel* and in conjunction with 720 ILCS 5/31-1 (2006), an individual could be arrested for obstructing a peace officer for failing to identify himself during a temporary stop.

[9] Cady asserts that all federal process servers are agents of the federal government. The truth or falsity of this assertion aside, he was not contributing to the swift resolution of the encounter.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—11-3-06