NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 6, 2009[*]
Decided May 7, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 08-2555

| | |
|---|---|
| YAODI HU, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 07 C 844 |
| PARK NATIONAL BANK and | |
| DONALD R. NICHOLS, | Ronald A. Guzmán, |
|     *Defendants-Appellees.* | *Judge*. |

## O R D E R

Yaodi Hu deposited thousands of dollars in counterfeit United States postal money orders into his account at Park National Bank. After the bank discovered the money orders were bogus and reversed Hu's deposits, he sued the bank and Donald Nichols, the postal employee who prompted the bank to investigate, claiming that the defendants violated the Right to Financial Privacy Act and conspired to deny him due process. The district court dismissed Nichols from the lawsuit for lack of service and granted summary judgment for

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

the bank.  We affirm the judgment.

As an initial matter, we note that our recitation of the facts tracks the story that was told by Hu and, for the most part, accepted as true by the bank.  Hu, though, failed to respond to the bank's statement of undisputed facts at summary judgment, so the district court correctly adopted the bank's factual presentation to the extent it differs from Hu's version and is supported by admissible evidence.  *See* N.D. Ill. Loc. R. 56.1; *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).  We too accept the bank's facts as true, although we construe them in the light most favorable to Hu.  *See Cady*, 467 F.3d at 1061.

Hu sells pianos under the name Piano Depot.  In early 2005 he received an email from "Idowu Martins," a foreign customer offering to purchase a $2,500 piano.  But the offer had an unusual twist: instead of simply paying the purchase price, Martins proposed to send $5,000 in money orders that Hu would cash and, from the proceeds, deduct the purchase price and wire the balance to a shipping company designated by Martins.  Hu agreed, and when he received five postal money orders totaling $5,000, he negotiated them at Park National and deposited the proceeds into his account at the bank.  Hu worried, though, that the money orders might be counterfeit, so he waited until they had cleared before withdrawing any funds.  Eighteen days later he withdrew $2,600 from the account without incident.  Hu reported to Martins via email that he had wired the money to the designated "shipper," but it is unclear from the record whether Hu ever shipped the piano.

A week after confirming the transaction, Hu received another email from Martins explaining that he had been diagnosed with cancer and was in dire need of an operation. Martins said he knew someone willing to donate $15,000 in money orders for the operation, but he asked Hu to negotiate them and wire the proceeds to his doctor, keeping 10% for his trouble.  Despite his earlier concern that the first set of money orders was bogus, Hu agreed, and ten postal money orders totaling $10,000 arrived within days.  Hu negotiated three of the money orders at Park National and deposited the proceeds, and then went to the branch post office in Maywood, Illinois, to cash the rest.  Hu asked Nichols, the branch postmaster, to examine the money orders for authenticity, and Nichols concluded that they were fakes. Hu informed Nichols that he had just negotiated three more from the same source, as well as five others a few weeks earlier.  Hu gave Nichols the address of Park National, and Nichols said he would visit the bank to investigate.

Nichols didn't visit the bank, but Postal Inspector Jeanne Lee did that same day.  She asked the bank to retrieve the three money orders and concluded that they were counterfeit. The bank immediately reversed Hu's deposit of the proceeds.  A fraud investigator notified Hu of the bank's action and explained that a postal employee had visited the bank and determined that the money orders were fake.  Later when the money orders from the piano

sale were also dishonored, the bank debited Hu's account another $5,000, leaving him with a negative balance. In July 2005 the bank sued Hu in state court for its losses; the outcome of that litigation is unknown.

Represented by counsel he later fired, Hu filed this lawsuit naming as defendants the bank and Postmaster Nichols. Hu alleged that the bank released his financial records to Nichols (Hu didn't know about Inspector Lee and believed it was Nichols who had visited the bank) in violation of the Right to Financial Privacy Act, 12 U.S.C. §§ 3401-3422, and that the defendants conspired to deny him due process by effecting the seizure of funds from his account. Hu maintained that the first batch of money orders was not counterfeit and thus the reversal of that deposit was illegal. He initially named Nichols in both his individual and official capacities but amended the complaint to remove reference to the latter. He also wanted to file a second amended complaint adding additional defendants and claims, but the district court refused to grant leave.[**]

On appeal Hu challenges nearly every decision of the district court. He first argues that the court erred in dismissing Nichols from the suit. But when the court learned that Hu had not served either Nichols or the United States a year after filing suit, *see* FED. R. CIV. P. 4(i)(3) (requiring that plaintiff bringing individual-capacity suit against federal employee serve both the employee and the United States), the court was correct to dismiss the claims against Nichols, *see id.* 4(m); *McMasters v. United States*, 260 F.3d 814, 817-18 (7th Cir. 2001). Nichols had never answered or otherwise responded to the amended complaint and thus, contrary to Hu's assertions, did not waive the defense of lack of service. *See* FED. R. CIV. P. 12(h)(1); *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

Hu next challenges the grant of summary judgment for Park National, asserting first that the district court erred in denying his request under Federal Rule of Civil Procedure 56(f) to extend discovery. After the bank had moved for summary judgment, Hu requested additional time to depose Inspector Lee and the bank's fraud investigator. Hu asserted that he had been unaware of their identities because the bank had never submitted initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1). But Hu (who did not

---

[**]Hu sought to add as defendants, among others, the United States Postal Service and John Potter, the Postmaster General. But he filed his second amended complaint without first obtaining leave to amend, and so the district court struck the complaint. Hu belatedly moved for leave to amend, and six months lapsed before the district court denied his motion. In the interim the Postal Service and Potter, apparently believing that Hu had properly named them as defendants, filed a motion to dismiss, which the district court granted. Hu challenges that decision on appeal but, because the second amended complaint was never accepted by the district court and the court's refusal to grant leave to amend was not an abuse of discretion, we need not address his argument.

make any initial disclosures either) never moved to compel the bank to provide the disclosures, nor did he propound any discovery requests of his own before the discovery deadline. Indeed, as the district court concluded, Hu "did nothing during discovery" and then waited until two months after the bank had submitted its motion for summary judgment before requesting additional time. *See Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000) ("[A] party needing additional discovery is under an obligation to bring the issue before the court in an expeditious manner."). Because Hu's lack of diligence was to blame for his failure to obtain discoverable information within the allotted time frame, the district court did not abuse its discretion in denying his Rule 56(f) motion. *See Grayson v. O'Neill*, 308 F.3d 808, 815-16 (7th Cir. 2002); *Kalis*, 231 F.3d at 1058 n.5.

As for the merits, we review the grant of summary judgment de novo and draw all reasonable inferences in Hu's favor. *See Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 645 (7th Cir. 2009). The due-process claim is frivolous (and at all events the bank cannot be liable under a *Bivens* theory, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63, 66 n.2 (2001); *Muick v. Glenayre Elecs.*, 280 F.3d 741, 742 (7th Cir. 2002)), so we confine our discussion to Hu's claim under the Right to Financial Privacy Act.

The Right to Financial Privacy Act, which was designed to strike a balance between the privacy interests of banking customers and legitimate law-enforcement needs, prohibits financial institutions from providing government officials with access to a customer's financial records unless certain procedures have been followed. *See* 12 U.S.C. §§ 3402, 3403; *United States v. Residence Located at 218 Third Street*, 805 F.2d 256, 260 (7th Cir. 1986). Hu contends that the bank released his financial records to Inspector Lee in violation of the Act, but, proof aside, has never even said what records he thinks the bank disclosed. A deposit slip documenting Hu's deposit of the money-order proceeds into his account might be a "financial record" for purposes of the Act, but the money orders themselves are not, *see* 12 U.S.C. § 3401(2) (defining "financial record" as "an original of, a copy of, or information known to have been derived from, any record held by a financial institution pertaining to a customer's relationship with the financial institution"); *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) (explaining that the "most salient feature" of the Right to Financial Privacy Act is its "narrow scope"), and there is no evidence that the bank provided anything else to Inspector Lee. In fact, the only evidence on the issue is an affidavit from the bank's fraud investigator—which Hu moved to strike as inadmissible hearsay—stating that the bank did not provide Lee with any information about Hu's account or show her anything other than the money orders. Even if Hu is correct that the district court should have disregarded that affidavit, summary judgment would nevertheless have been proper. The bank met its burden at summary judgment by identifying the absence of any evidence to support Hu's claim of an unlawful disclosure, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and Hu was therefore required to produce sufficient evidence from which a jury could find in his

favor on the essential elements of his case, *see Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 780 (7th Cir. 2007).  He did not do so.  Indeed, he failed to respond at all to the bank's motion for summary judgment.  Having chosen to rest on the unsubstantiated allegations in his complaint, Hu was not entitled to have his case proceed any further.  *See Celotex*, 477 U.S. at 323-24.

We have considered Hu's remaining arguments and conclude that they are without merit.

AFFIRMED.