NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 12, 2014[*]
Decided November 12, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-1545

| | |
|---|---|
| BRIAN SHIFRIN and MELANIE SHIFRIN, *Plaintiffs-Appellants*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:12-CV-01011-JMS-DKL |
| LIBERTY MUTUAL INSURANCE, *Defendant-Appellee*. | Jane Magnus-Stinson, *Judge*. |

**O R D E R**

Brian and Melanie Shifrin appeal the district court's grant of summary judgment for Liberty Mutual Insurance in their diversity action asserting breach of contract and negligence with regard to their homeowners-insurance coverage. We affirm.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

After a tornado damaged their barn and the roof of their house, the Shifrins filed an insurance claim. An adjuster from Liberty promptly inspected the damage, and a contractor hired by the insurer installed tarps over the house's damaged roof. The adjuster determined that the cost to repair the damage to the barn likely exceeded the building's coverage, so Liberty paid them $14,226 (the policy limit) for the barn's damage. The adjuster also advised the Shifrins that they needed to replace their house's roof immediately to protect the house from further damage.

About six weeks later, the adjuster re-inspected the property (at the Shifrins' request) and saw new water damage. He again told the Shifrins that their policy required them to repair the roof to protect the house from further damage. He estimated the cost to repair the damage to the house at $22,713, though he acknowledged that there were "some open items" including "the remediation of the premises once the roof is replaced." Liberty issued the Shifrins a check in the estimate's amount.

The Shifrins disputed the amount of that payment because it did not include damage to their house's foundation. In response to the Shifrins' contention, Liberty had the property inspected by an engineer, who determined that the tornado had caused some cracks in the foundation—damage that was covered by the policy. Liberty agreed to pay to repair those cracks once the Shifrins selected a contractor to do the work, but the Shifrins disputed the engineer's determination that only some of the cracks were caused by the tornado. Liberty suggested that they hire their own engineer to evaluate the damage and advised them that under the terms of their policy, they were entitled to an appraisal if they disputed the report of Liberty's engineer. Over the following months, the Shifrins and Liberty continued to disagree about the extent of the house's tornado-related damage and the necessary repair costs, and the Shifrins learned that Liberty would not renew its policy after its expiration.

Eventually Liberty's adjuster met with a contractor whom the Shifrins had selected, and both men agreed on the cost of the work to repair the damage to the roof and inside the house. The adjuster revised his estimate to $36,950.94, and Liberty issued the Shifrins a supplemental payment of $14,237.25 (the difference between the earlier estimate and the revision); Liberty reminded the Shifrins that "we will afford coverage for water remediation when the work has been performed" but that the work "can only take place once the roof has been replaced." The parties continued to wrangle over the amount of loss. After the Shifrins insisted that there was additional damage to the roof, siding of the house, and the chimney, Liberty arranged for another engineering inspection. The Shifrins objected to the new report, and Liberty decided to initiate an

appraisal process, as provided in the Shifrins' policy; the Shifrins refused to participate. The roof still had not been repaired.

The Shifrins brought this suit in state court, and Liberty removed it to federal court under diversity jurisdiction. *See* 28 U.S.C. § 1332(a). The Shifrins asserted that Liberty breached the insurance contract by withholding payments and "failing to act timely and favorably" on their claim. They added that Liberty breached its duty of good faith and fair dealing by invoking the appraisal provision; destroying reports relating to the damage; and cancelling their policy in order to "punish" them. In addition they claimed that Liberty was grossly negligent by waiting nine months to investigate their insurance claim, and they asserted claims for fraud and intentional and negligent infliction of emotional distress.

The district court granted Liberty's motion for summary judgment. The court agreed with the insurer that the Shifrins had breached the policy by failing to have the roof repaired. The court also concluded that Liberty properly invoked—and did not waive—its right to an appraisal, and that the Shifrins' refusal to participate in the appraisal process was another instance in which they did not comply with their policy.

The Shifrins moved to reconsider based primarily on newly discovered evidence—a document from the county assessor that they say estimates the fair market value of their house in 2011 as $63,000—thus, in their view, the house's value was so low that replacing the roof was not reasonable. They also asked the court for permission "to submit additional details of the 'reasonable and necessary repairs'" they performed. The court denied the motions, stating that the evidence was not newly discovered because the Shifrins already had obtained the assessor's estimate before it had ruled on summary judgment, and they had not presented any reason why the court should consider additional evidence that they did not submit in opposition to summary judgment.

The Shifrins appeal, essentially challenging the district court's conclusion that they breached their insurance contract by refusing to repair the roof. They assert that they were not obligated under the policy to repair the roof because Liberty had agreed to repair it and the repairs would have been too expensive relative to the house's value.

We agree with the district court that the Shifrins breached their policy by not repairing their roof after the tornado. Under the policy, any loss required them to "protect the property from further damage" and, if repairs were required, to "make reasonable and necessary repairs to protect the property." For damage that exceeded

$2500, reimbursement was conditioned upon repair: "We will pay no more than the actual cash value of the damage until actual repair or replacement is complete." The Shifrins don't dispute that the roof remained unrepaired, despite repeated reminders of their policy's requirement, and as a result the house incurred additional water damage. A contract provision requiring the insured to complete certain duties after a loss is not optional, and non-compliance is a breach of the contract. *See Foster v. State Farm Fire & Cas. Co.*, 674 F.3d 663, 667 (7th Cir. 2012) (applying Indiana law); *Morris v. Economy Fire & Cas. Co.*, 848 N.E.2d 663, 666–67 (Ind. 2006).

The Shifrins also challenge the district court's denial of their motion for summary judgment and maintain that Liberty breached the contract and acted in bad faith by not repairing the roof or the interior water damage. But as the district court stated, the Shifrins didn't identify any part of the contract requiring Liberty to repair the roof; Liberty paid them $36,950.94 (the estimate of the cash value of the damage) before any repair or replacement was performed and agreed to pay for moisture remediation after the roof was repaired.

The Shifrins last challenge the district court's denial of their motion to reconsider, arguing that the court should have considered the additional evidence of roof repairs and that, as pro se litigants, they should be afforded leniency in submitting evidence in response to summary judgment. But the court did not abuse its discretion by denying the motion; Liberty complied with the local rules and sent the Shifrins a notice explaining how to respond to Liberty's motion for summary judgment, *see* S.D. IND. L.R. 56-1, and pro se litigants must follow the court's procedural rules, *see Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Both parties seek sanctions in this court under FED. R. APP. P. 38. The Shifrins argue that Liberty should be sanctioned for litigating the suit in bad faith, but little of the Shifrins' motion concerns Liberty's conduct on appeal. Liberty for its part, argues that the Shifrins' appeal is frivolous, but we cannot say that they filed this appeal in bad faith. *See Salata v. Weyerhaeuser Co.*, 757 F.3d 695, 701 (7th Cir. 2014).

Accordingly, we DENY the parties' motions for sanctions and AFFIRM the district court's judgment.