**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 18, 2019[*]
Decided October 21, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 18-3556

| | |
|---|---|
| DONTA JENKINS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Western District of Wisconsin. |
| *v.* | No. 16-cv-694-bbc |
| SALAM SYED, *et al.,* | Barbara B. Crabb, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Donta Jenkins, a former Wisconsin inmate, believes that prison staff acted with deliberate indifference to his shoulder and back pain when they delayed a prescribed cortisone injection for months. He sued several prison medical personnel under 42 U.S.C. § 1983 for Eighth Amendment violations. The district court concluded that Jenkins provided no evidence of any constitutional violations and entered summary judgment for the defendants. We affirm.

---

[*] We agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Jenkins, then an inmate at Columbia Correctional Institution in Wisconsin, injured his lower back in a basketball game. A nurse gave him ibuprofen, a medical pain rub, and an ice compress. His pain did not disappear, and days later he was given a muscle relaxant. The following week he saw Dr. Salam Syed (a Wisconsin Department of Corrections physician) and told the doctor that his shoulder also hurt (Jenkins had undergone shoulder surgery years before). To alleviate his shoulder pain, Jenkins asked for a cortisone injection. Dr. Syed referred Jenkins to physical therapy for his shoulder, replaced his ibuprofen prescription with a stronger prescription for naproxen, and ordered medical staff to schedule Jenkins for a future cortisone injection.

Over the next eight months, Jenkins was seen by Dr. Syed and other medical staff on at least 49 occasions, 21 of those relating to his shoulder pain and back pain. Within a month of first seeing Dr. Syed, Jenkins went on the first of multiple hunger strikes to protest the pace of scheduling his physical therapy and cortisone injection. He continued to receive regular medical evaluations, but Dr. Syed would not schedule a cortisone treatment during the strike because cortisone injections can be dangerous for hunger-strike patients (cortisone injections can cause complications relating to starvation ketosis). After a month Jenkins ended his first strike.

When his requested medical treatment was not forthcoming, he soon started another hunger strike. This time Jenkins was evaluated by his physical therapist, who concluded that Jenkins no longer needed therapy. The therapist also noted that Jenkins admitted to not completing his prescribed physical-therapy exercises and that despite Jenkins's assertion that he was unable to attend recreation, prison officials had observed him doing push-ups and squat presses at recreation the previous week. Around this same time, Jenkins asked Dr. Syed for an MRI, but Dr. Syed decided that an MRI was not medically necessary. Jenkins then ended his hunger strike, and Dr. Syed ordered the cortisone injection.

On the date of the scheduled injection, however, Jenkins refused treatment (the record does not explain why). He later filed several treatment requests complaining that his medical needs were being ignored and that he was not receiving physical therapy; he also asserted that he would continue to refuse cortisone injections unless they took place inside the health-services unit (injections are often administered in an inmate's cell, but Jenkins said his cell was medically unsuitable). Over the next several months, he engaged in further hunger strikes and continued to submit treatment requests and complaints. In December he finally agreed to and received a cortisone injection (which he later said did not improve his pain).

Jenkins brought this deliberate-indifference suit against the prison's medical staff asserting that the cortisone injection was delayed and that he was improperly refused physical therapy, pain medication, and an MRI. The district court later entered summary judgment against him. The judge explained that because Jenkins had not supported his assertions with specific citations (violating a pretrial conference order), she would consider his proposed facts and his responses to the defendants' facts only to the extent that they were "clearly and obviously" supported by the record. The judge then ruled that Jenkins's own actions prevented him from receiving the cortisone injection sooner, Jenkins did in fact receive physical therapy and pain medication, and Dr. Syed was under no obligation to give Jenkins an MRI just because he asked for one.

On appeal Jenkins first generally argues that the district court improperly discounted his proposed facts by concluding that he did not cite the record with enough specificity. He appears to contest the judge's ruling that she would consider Jenkins's assertions "only to the extent that they are clearly and obviously supported by citations to the medical record."

The judge did not abuse her discretion by requiring Jenkins to provide specific support for his factual assertions at the summary-judgment stage. District courts do not abuse their discretion by requiring pro se litigants to comply with court rules. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Jenkins v. Frisch*, 773 F. App'x 310, 311 (7th Cir. 2019) (upholding a similar ruling in another case brought by Jenkins before the same district-court judge). As the judge correctly explained, citing multiple pages of medical records to support broad, conclusory assertions violated the pretrial conference order and failed to satisfy the rule that the record be cited with particularity. *See* FED. R. CIV. P. 56(c)(1)(A). Further, Jenkins's citation practice is haphazard; for example, to support his assertion that he did not receive a cold compress, he cited a medical record listing his prescribed medication.

Next, Jenkins maintains that the appellees deliberately delayed administering a cortisone injection and disregarded his pain. Deliberate indifference can be inferred, he asserts, from the eight-month delay between the date when Dr. Syed first prescribed the cortisone injection and the date when he finally received it.

To survive summary judgment on his deliberate-indifference claims, Jenkins needed to provide at least some evidence that the defendants knew of his serious medical condition but intentionally disregarded it. *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994); *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018). As the judge correctly

explained, even viewing the record in the light most favorable to Jenkins, no evidence suggests that the defendants ignored his medical needs. The undisputed facts show that he received dozens of medical evaluations over an eight-month period and was prescribed physical therapy, prescription-strength painkillers, and a cortisone injection. The record also reflects that despite many attempts by the medical staff to schedule the cortisone injection, his frequent hunger strikes prevented him from safely receiving it. Finally, on the one occasion when hospital staff was set to administer his injection (at a time when he was not on a hunger strike), Jenkins refused to receive it.

We AFFIRM the judgment of the district court.