**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 10, 2020[*]
Decided November 12, 2020

**Before**

DIANE S. SYKES, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-1894

| | |
|---|---|
| CARL SELF, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 18-C-1823 |
| ZACHARY BERGH, *et al.,* *Defendants-Appellees.* | Lynn Adelman, *Judge.* |

**O R D E R**

Carl Self, a former pretrial detainee, asserts that officers at the Brown County Jail in Green Bay, Wisconsin, violated his constitutional rights when they ignored his requests for a shower, medical attention, and a new uniform after a guard discharged oleoresin capsicum spray ("OC" or "pepper" spray) at him. Because Self did not raise

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

any factual dispute about whether the jail officers acted reasonably, we affirm the district court's entry of summary judgment for the defendants.

At summary judgment, Self did not reply to the defendants' proposed statement of undisputed facts or provide his own statement, so the district court deemed the defendants' facts undisputed. *See* E.D. WIS. CIV. L.R. 56(b)(2)(B).[1] Thus we recount the facts as the defendants stated them, still viewing them in the light most favorable to Self and drawing inferences in his favor. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

On September 26, 2018, at 9:40 p.m. a guard separated Self and another detainee with OC spray. When a guard uses OC spray, under jail policy, he must assess whether a detainee was directly hit in the face or eyes. At 9:41 p.m., Corporal Zachary Bergh observed Self and spoke to the guard, and he concluded that the OC spray did not directly hit Self in his face or eyes. (Self maintains that he was sprayed on his face, eyes, and body.) Bergh asked if Self needed medical attention; Self replied "no." Bergh did not observe any negative effects, so Self was transferred to a segregation unit.

During the transfer, Self was argumentative and noncompliant with instructions. Upon arrival in the new pod, he asked for medical care ("OC aftercare") and a shower. Because Self was still verbally abusive, however, Bergh denied his request for a shower and said that he could not be safely evaluated at that time. Bergh told Self to rinse off using his sink. Self then asked for a clean uniform, so, as he left the pod, Bergh directed his staff to get one for Self. Bergh then walked to the medical unit and told the medical staff about the fight and that Self requested care.[2] Bergh last saw Self on the night of the fight, at around 2:43 a.m. on September 27. He did not work on September 28 or 29.

Correctional officer Wade Delorit checked on Self at around 12:30 a.m. on September 27, and Self asked for a shower and a clean uniform. Delroit told him that, per the unit's rules, he could shower during his recreation time in the morning and to use the sink in the meantime. Detainees are typically provided with a hygiene kit

---

[1] Self contests this decision on appeal, but we have frequently explained that district courts may strictly enforce their local rules against *pro se* litigants at summary judgment. *Cady v. Sheahan*, 467 F.3d 1057,1061 (7th Cir. 2006). Doing so here was not an abuse of discretion. *See id*.

[2] Self settled his claims against the medical staff members he sued, so we omit discussion of any medical response after the fight.

including soap upon transfer, though Self contends he lacked soap overnight. Still, he told Delorit later that he felt better after cleaning up in the sink.

Delorit looked but could not find a clean uniform in the unit. He did not have access to the laundry, where new uniforms are stored, during the overnight shift. Delorit told Self that he would continue looking during his break at 2:00 a.m. and notify the officers working the next shift. When he did not find one, he left a note. Delorit had no further contact with Self after his shift: He worked on a different unit on September 27 and was off the next two days.

Self took a shower the day after the fight, September 27, but he did not receive a clean uniform until late September 28 or early the next day; the correctional officer who provided it worked a shift from 6:30 p.m. to 6:30 a.m. With his summary-judgment brief, Self submitted recordings of his contemporaneous phone calls to his mother, expressing his need for a new uniform because he was covered in blood and OC spray. OC spray is reddish in color and can look like blood (and vice versa).

Correctional officers Brian Ostrenga and Alek Pearson also worked at the jail in the days after Self's fight. Self did not ask either of them for medical care, a shower, or a new uniform. Self asked Ostrenga for, and received, a blanket and book from his property box. Pearson did not work in Self's unit during the relevant period.

Self sued Bergh, Delorit, Ostrenga, and Pearson (among others no longer in the case) under 42 U.S.C. § 1983, alleging that they subjected him to unconstitutional conditions of confinement by failing to timely provide him with medical care, a shower, and a new uniform. After discovery, the defendants moved for summary judgment, and the district court granted their motion. The court concluded that Self failed to provide sufficient evidence from which a reasonable jury could find that the defendants acted objectively unreasonably. Self appeals this decision, which we review de novo. *See Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020).

Self contends that the way the guards handled his requests for medical care, a shower, and clean uniform in the hours and days after his fight violated his constitutional rights. Though the record was unclear, the district court inferred, based on the timing of his arrest and conviction, that Self was a detainee. Neither side takes issue with that inference on appeal. Therefore, we consider whether any defendant created conditions of confinement that were "objectively unreasonable." *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015); *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir.

2019) (applying an objectively unreasonable standard to all conditions-of-confinement claims brought by pretrial detainees.) This means a pretrial detainee must establish that a defendant "acted purposefully, knowingly, or perhaps even recklessly[,]" but with more than negligence. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018).

Self contends that he raised a factual dispute that the officers acted unreasonably because they violated the jail's policy of providing him medical care immediately after contact with OC spray. A violation of jail policy alone does not establish a constitutional violation, however. *See Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020). In any case, the evidence shows that Bergh (the only named defendant present immediately after the fight) adhered to the policy and acted reasonably. He evaluated Self and concluded that OC spray hit the side of his head but not his face or eyes. He asked Self if he required medical care, and Self declined. When Self changed his mind a short time later, Bergh notified medical staff, even though he did not observe any negative reactions to the OC spray. Finally, because there is no evidence that Self had an urgent need for medical care, Bergh also reasonably adhered to the jail's policy when he told the medical staff that they should postpone treatment until Self no longer posed a safety risk. *See Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979); *Mays v. Dart*, 974 F.3d 810, 820–21 (7th Cir. 2020). Self counters that he was not argumentative, but the district court need not have credited Self's unsworn allegation in the face of contrary evidence.

Next, Self argues that he raised a factual dispute that the guards unreasonably delayed his access to a shower. But we agree with the district court that the overnight delay was not unreasonable. Bergh considered Self a safety risk at the time he asked for a shower. *See Bell*, 441 U.S. at 546–47; *Mays*, 974 F.3d at 820–21. Delorit told Self that he could shower at the next available time, during morning recreation. Meanwhile, he could rinse off in his sink. Self further complains that he did not receive soap until the next day, although the evidence shows that the practice is to distribute it upon transfer. Even if Self did not receive soap until the next day, though, there is no evidence that this resulted from anything more than negligence, which does not establish a constitutional violation. *See McCann v. Ogle Cnty.*, 909 F.3d 881, 886–87 (7th Cir. 2018).

Next, Self contends that he raised a factual dispute that the defendants unreasonably delayed giving him a clean uniform. Although the delay here appears lengthy, persisting even days after Self showered, neither Bergh's nor Delorit's conduct was objectively unreasonable. These two defendants were involved only to the extent that Self did not get a clean uniform on the night of the fight. After that, Delorit and Bergh were not involved. Further, they each acted reasonably when they were.

Delorit searched for a uniform as soon as Self requested one at 12:30 a.m. When he could not find one, he notified Self and then left a note for the morning shift. The laundry, where clean uniforms are kept, was closed overnight. Self says that Delorit could have gotten one from the booking department, but that is unsupported. It is also undisputed that Bergh told his staff to provide Self a new uniform shortly after Self arrived in segregation. Self argues that Bergh must be lying because his staff would have followed his order; however, even if someone disobeyed Bergh, subordinates' actions are not imputed onto supervisors. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Self also argues that, because he had blood on his uniform, jail policy required an immediate change of clothing. Although Self told his mother that his uniform was bloody, there is no evidence he told any defendant. The defendants swore that they did not see any blood. Self insists they are lying because a guard who is not a party to this case saw blood. But credibility determinations are for a jury after the plaintiff raises a dispute of material fact; Self's speculation is insufficient. *See Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012).

As to the remaining defendants, we agree with the district court that Ostrenga was entitled to summary judgment because, although he interacted with Self, there is no evidence that he was asked for, or otherwise knew of a need for, access to a shower or a new uniform. And there is no evidence that Pearson participated in the events on which Self's claims are based. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).

Finally, to the extent that Self is challenging the denial of his motion to alter or amend the judgment, the district court properly denied it. We agree that Self's motion restated his previous arguments and expressed disagreement with the district court's ruling, rather than identify any new evidence or a manifest error of law or fact. *See* FED. R. CIV. P. 59(e); *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014).

We have reviewed the rest of Self's arguments, and none has merit.

AFFIRMED