In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 16-2707

TERRY DAVIS,

*Plaintiff-Appellant,*

*v.*

DAVID MASON and
BLAKE THRASHER,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-01206-TWP-TAB — **Tanya Walton Pratt**, *Judge.*

———————————

SUBMITTED MAY 4, 2017 — DECIDED FEBRUARY 6, 2018

———————————

Before KANNE, SYKES, and HAMILTON, *Circuit Judges.*

SYKES, *Circuit Judge.* Terry Davis, an Indiana prisoner, sued two prison guards alleging that they punched him repeatedly, put him in a chokehold, and placed a plastic bag over his head—all gratuitously and thus in violation of his rights under the Eighth Amendment. A district judge entered summary judgment for the defendants, holding that Davis had not exhausted his administrative remedies as

required by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a). We vacate and remand for further proceedings. The evidence in the summary-judgment record does not clearly show that Davis failed to exhaust available administrative remedies.

## I. Background

Grievances by Indiana prisoners proceed in three steps. The inmate must (1) attempt informal resolution; (2) file a formal grievance; and (3) file an administrative appeal. IND. DEP'T OF CORR., MANUAL OF POLICIES & PROCEDURES ("IDOC MANUAL OF POLICIES & PROCEDURES"), No. 00-02-301, §§ V, XIII, XIV (July 2012), http://www.in.gov/idoc/files/00-02-301__Grievance_Procedure_1-01-10.pdf.[1]

The first step requires the inmate to raise his complaint with an appropriate staff member as defined in the written policy. *Id.* § XIII(A). If the matter cannot be resolved informally, the inmate must submit a formal grievance. A grievance may be returned unprocessed if it does not comply with certain criteria in the written policy, including a rule against using the regular grievance process to avoid specialized procedures for disputing disciplinary sanctions or "classification" decisions like facility transfers, bed assignments, and changes in security levels. *See id.* §§ V(B)(5–6), XIV(A), (B)(5–6). If a grievance is returned unprocessed, however, the inmate must be told "why the form was returned and how it may be corrected." *Id.* § XIV(B). The prisoner then has five working days to correct the identified deficiencies and resubmit the form. *Id.* As relevant here, the

---

[1] This policy was updated effective April 5, 2015, but the older policy governs this case.

grievance policy makes no mention of a requirement to notify Internal Affairs and does not authorize an administrative appeal of a refusal to process a grievance.

Davis filed this suit under 42 U.S.C. § 1983 alleging that two corrections officers—David Mason and Blake Thrasher—assaulted him, unprovoked, on January 5, 2014, leaving him with two black eyes, broken teeth, and possibly a broken nose. In the days immediately following the alleged assault, Davis tried several times to submit grievances complaining about this incident, but none were processed. He filed the first one on January 10, five days after the incident. The grievance coordinator received this filing on January 15 and that same day sent Davis a "Return of Grievance" form saying that she would not process it. The return form contains a list of boilerplate reasons for refusing to process a grievance. The coordinator checked two boxes: (1) the grievance could not be processed because it raised a "[c]lassification … issue or action" and (2) was "not completely filled out." The grievance coordinator did not identify the "classification" issue or explain what was missing from Davis's filing. Rather, she instructed Davis "to contact Internal Affairs in this matter."

Davis promptly resubmitted his grievance, but on January 23 the coordinator again sent him a Return of Grievance form. This time she did not check the box rejecting the grievance as incomplete. As before, however, she checked the box indicating that the grievance concerned an unidentified "classification" issue. And she again wrote that Davis needed to contact Internal Affairs "for an investigation." Finally, the coordinator cryptically instructed him to contact his "unit team for the separate[] issue."

On March 7 Davis tried a third time to submit a formal grievance regarding the assault. The grievance coordinator sent him another Return of Grievance form, this one indicating that the grievance was "too late" and again asserting that Davis needed to contact Internal Affairs. Davis resubmitted the grievance a few days later with the same outcome, except this time the return form omitted the instruction to contact Internal Affairs. Instead, the coordinator indicated that although she was returning Davis's latest grievance because he "failed to file it in a timely manner," she would forward a copy to Internal Affairs "because of the seriousness of your complaint."

The administrative trail ends there. Davis thereafter filed suit against Mason, Thrasher, and 12 other corrections officials. The judge screened the complaint and dismissed the claims against the other 12 defendants, *see* 28 U.S.C. § 1915A, and Davis does not challenge that decision. Mason and Thrasher answered the complaint, asserting (among other defenses) that Davis failed to exhaust administrative remedies. At the judge's invitation, they moved for summary judgment on the exhaustion defense. They did not object to Davis's failure to seek an informal resolution before submitting his formal grievances. Nor did they assert that Davis could have, but did not, pursue an administrative appeal after the grievance coordinator refused to process each of his grievances. Rather, they argued that Davis did not file a proper grievance and, when given the chance, did not remedy the shortcomings in his submissions.

As evidentiary support the officers submitted the Return of Grievance forms and a declaration from the grievance coordinator. The coordinator's declaration sheds no further

light on what was missing from Davis's grievances. Nor does it identify the "classification" issue or explain why talking to Internal Affairs was a precondition to having a grievance processed. The officers did not introduce Davis's four grievances to give context to the coordinator's return forms, and they have not contradicted Davis's contention that his grievances—his only copies, he says—were not sent back to him with the return forms.

Davis countered that the return forms themselves confirm that he made a good-faith effort to submit a grievance. He also argued that Internal Affairs "refused to take the matter at hand seriously," but he did not say when he first contacted Internal Affairs. The judge accepted the officers' contention that Davis's grievances were inadequate and entered judgment in their favor on nonexhaustion grounds. This appeal followed.

## II. Discussion

Davis argues that the grievance process was made unavailable to him by the grievance coordinator's refusal to process his grievances. He points out that she gave him scant or no explanation of the perceived shortcomings in his grievances, and she did not tell him how to fix them. And she inexplicably insisted that he should talk to Internal Affairs instead.

The officers respond by arguing that Davis waived any claim that the grievance process was made unavailable to him by the mixed or unexplained signals from the grievance coordinator. Waiver aside, they insist that administrative remedies remained available to him. Finally, in a new argument on appeal, the defendants contend that the grievance

coordinator's instruction to contact Internal Affairs was "simply one step in the administrative grievance process," i.e., part of the initial step of trying to informally resolve an issue.

To begin, we reject the officers' assertion that Davis waived any argument about the unavailability of the grievance procedure. It was not Davis's burden to establish that the grievance process was unavailable; it was the officers' burden to show that Davis did not exhaust available remedies. *See Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016); *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The officers did not meet their burden. First, to the extent that they now argue that contacting Internal Affairs was a normal part of the informal-resolution step, the record shows otherwise. The grievance coordinator never marked the checkbox on the return form identifying a failure to attempt an informal resolution as one of the reasons she returned Davis's grievance. Nor did she attest in her declaration that she rejected Davis's grievances because he did not try to resolve the matter informally. So this argument is both new on appeal and lacks evidentiary support.

Moreover, the grievance policy makes no mention of Internal Affairs in describing the informal-resolution process. It says only that the inmate should discuss the issue with the "staff member responsible for the situation"—here, the two officers—or other specifically identified staff members. *See* IDOC MANUAL OF POLICIES & PROCEDURES, § XIII(A). The procedure also explains that an "Executive Assistant" may "require the offender to talk to several people to attempt an informal resolution," *id.*, but the grievance coordinator has never claimed that she was invoking this author-

ity. In fact, she attests that her role was limited to screening grievances at the *second* step of the grievance process. If her role was broader than she states, or if an authorized *executive assistant* told Davis to speak with Internal Affairs, the officers made no effort to establish this at summary judgment.

Second, the grievance coordinator kept rejecting Davis's grievances based on his purported noncompliance with unannounced or unexplained requirements. *See Hill v. Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016). Administrative remedies may be effectively unavailable if prison officials "erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) (recognizing that the grievance process may be unavailable if prison authorities mislead a prisoner into believing that participating in an internal-affairs investigation will fulfill the grievance requirement); *see also Ross v. Blake*, 136 S. Ct. 1850, 1860 & n.3 (2016) (explaining that interference with a prisoner's use of the proper grievance procedure by misleading a prisoner makes the administrative process unavailable).

As we've explained, the evidence at summary judgment does not support a conclusion that the grievance coordinator was authorized to demand that Davis contact Internal Affairs. By doing so, she was imposing on him a completely new rule. Adding to the confusion, her unexplained insistence that his grievance involved a classification issue sent mixed signals about which course Davis should take. *See Swisher v. Porter Cty. Sheriff's Dep't*, 769 F.3d 553, 555 (7th Cir. 2014). Checking the "classification" box might have meant that Davis needed to take another step to file a formal griev-

ance *or* that he was using the wrong process. And the griev-
ance coordinator did not elaborate on how Davis could fix
*any* of these perceived shortcomings. The grievance policy
specifically required her to explain "how [the form] may be
corrected." *See* IDOC MANUAL OF POLICIES & PROCEDURES,
§ XIV(B).

When the record is viewed in the light most favorable to
Davis, a reasonable fact finder could conclude that he did all
that was required of him yet was prevented from filing his
grievance because of the mixed or improper instructions
from the grievance coordinator. It's worth repeating that he
had no way to contest her refusal to process his grievance.
The policy specifies that staff should "deny" grievances that
concern a "non-grievable" issue. *See id.* § V(B). Inmates may
appeal the denial of a grievance. *See id.* § XIV(E). But the
policy does not provide for an appeal from a *refusal to process*
a grievance. *See Hill*, 817 F.3d at 1040 (explaining that the
Indiana grievance policy does not provide for appeals of
unprocessed grievances); *see also Small v. Camden County*,
728 F.3d 265, 273 (3d Cir. 2013) (exhaustion did not require
appealing a "non-decision" where such an appeal was not
provided in the prison's procedures).

Because the record permits the conclusion that Davis did
as much as the grievance policy required of him, summary
judgment on nonexhaustion grounds was improper. We
VACATE the judgment and REMAND for further proceedings.