In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 17-3139

VALERIE MCCANN, Special Administrator
of the Estate of PATRICK J. MCCANN, deceased,

*Plaintiff-Appellant,*

*v.*

OGLE COUNTY, ILLINOIS, *et al.,*

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:11-cv-50125 — **Frederick J. Kapala**, *Judge.*

---

ARGUED SEPTEMBER 14, 2018 — DECIDED NOVEMBER 30, 2018

---

Before BAUER, HAMILTON, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Patrick McCann died from a doc-tor's over-prescription of methadone while detained and awaiting trial at the Ogle County Correctional Center. His es-tate brought suit under 42 U.S.C. § 1983 against Ogle County and a host of county officials and other individuals, including the doctor and nurse who cared for McCann while he was in-carcerated, alleging deliberate indifference to McCann's

severe burn wounds and related medical needs. After the treating physician and his private employer settled the claims against them, the district court entered summary judgment for the remaining defendants, concluding that the evidence did not show that any individual defendant acted with deliberate indifference in treating McCann.

Since the district court's decision, this court decided *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018), replacing deliberate indifference with a standard requiring a showing of objective reasonableness for a claim challenging the medical care provided to a pretrial detainee like McCann. Measuring the record evidence under this new standard, we affirm the district court's award of summary judgment to the individual defendants. So, too, do we affirm the district court's determination that the record evidence did not support a claim for municipal liability against Ogle County under *Monell v. Dep't of Social Services of New York*, 436 U.S. 658 (1978).

# I

## A

On March 30, 2010, McCann assaulted and threatened to kill his mother, only then to set fire to her house in the small town of Polo, Illinois. McCann sustained substantial burn injuries and spent the next three weeks in the hospital. He was released to police custody on April 20, charged with residential arson and aggravated battery, and transported first to the Winnebago County jail and an hour later to the Ogle County Correctional Center. McCann arrived at the Ogle County facility with his hospital discharge papers, a list of prescription

medications to be filled, and instructions for caring for his burn wounds.

Although expressing initial surprise that someone in McCann's condition would not remain hospitalized, the Ogle County correctional staff went to work to accommodate his needs and monitor his condition. For her part, Cindy Mongan, a licensed practical nurse, reviewed McCann's hospital discharge summary and called Dr. Stephan Cullinan, a contract physician responsible for inmate care at the Ogle County facility, to inform him of McCann's admission and to fill the prescriptions. Captain Cindy Kerwin of the Ogle County Sheriff's Office managed the correctional center and took steps to order a hospital bed, air mattress, and extra sheets to better accommodate McCann. Over the ensuing days, Nurse Mongan and others checked and documented McCann's status every 5 to 15 minutes around the clock.

Dr. Cullinan examined McCann for the first time on April 27, finding normal vital signs and observing that McCann was experiencing no difficulty breathing, moving, and eating or drinking. That same day Dr. Cullinan decided to change McCann's pain medication to 60 mg of methadone twice per day—an amount the district court recognized was "much too high a dose." Unaware of the dangers associated with this dosage, Nurse Mongan provided the methadone to McCann as directed by Dr. Cullinan.

Two days later, on April 29, Mongan informed Dr. Cullinan that McCann had slept much of the previous day and through the night with no complaints of pain. Her morning status checks showed McCann alert and talkative, with no lingering signs of fatigue. That evening, however, other jail personnel noticed that McCann appeared sluggish,

and the next morning he struggled to stay awake during breakfast.

During the early morning hours of April 30, Nurse Mongan thought McCann looked tired, but otherwise saw that he was able to eat, drink, and walk around his cell. Not observing any trouble with McCann's breathing, Mongan did not check his vital signs. She conveyed McCann's condition to Dr. Cullinan at approximately 9:00 a.m. and, during the telephone call, Dr. Cullinan reduced the methadone prescription from 60 mg to 40 mg, twice daily. Another staff member checked on McCann at least four times between 9:00 a.m. and 11:00 a.m. and observed him asleep in his cell.

Shortly after 11:00 a.m., Nurse Mongan and a colleague entered McCann's cell to serve him lunch and found him unresponsive and not breathing. While waiting on an ambulance to arrive, Mongan performed CPR, but was unable to resuscitate McCann. An autopsy showed that McCann died from an over-prescription of methadone.

B

In May 2011, McCann's estate brought this action under 42 U.S.C. § 1983 against numerous defendants. Two of those defendants included Dr. Cullinan and his employer, Health Professionals, Ltd. During the course of the litigation, Dr. Cullinan and Health Professionals agreed to a settlement with McCann's estate. What remained were claims for money damages against Nurse Mongan, Captain Kerwin, and Ogle County Sheriff Gregory Beitel in their individual capacities as well as separate claims, including against Sheriff Beitel, and Captain Kerwin in their official capacities, which the district

court treated as claims for municipal liability against Ogle County.

On the defendants' motions for summary judgment, the district court evaluated the claims against the individual defendants under the deliberate indifference standard of *Farmer v. Brennan*, 511 U.S. 825 (1994), and concluded that no reasonable jury could find Nurse Mongan acted with such indifference to McCann's medical needs. Specifically, the district court determined that Mongan neither was aware of the risks associated with the dosage of methadone prescribed by Dr. Cullinan nor at any point did she otherwise disregard clear risks to McCann's health. And more generally, the district court emphasized that the record evidence showed that "Mongan provided extensive care and treatment for McCann and was anything but deliberately indifferent to his medical needs."

As for Sheriff Beitel and Captain Kerwin, the district court concluded that there was no evidence showing that they shouldered responsibility for McCann's medical care or otherwise learned of any risks associated with the methadone dosage prescribed by Dr. Cullinan. Accordingly, the district court entered summary judgment for each of the defendants sued in their individual capacity.

On the *Monell* claim against Ogle County (and Sheriff Beitel and Captain Kerwin in their official capacities), the district court granted the defendants' motions for summary judgment. The court found no evidence that Ogle County had a policy, formal or informal, that caused McCann to remain incarcerated to save the County hospitalization costs and, by extension, that led to his death. The decision that McCann did not need to remain hospitalized, the district court

underscored, was the product of Dr. Cullinan's medical judgment. "By all accounts," the district court added, "McCann's condition was being properly treated at the jail and he was doing fine until Dr. Cullinan prescribed a dosage of methadone that turned out to be toxic."

## II

### A

After the district court ruled on the defendants' motions for summary judgment, we decided *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018), holding that a standard of objective reasonableness, and not deliberate indifference, governs claims under the Fourteenth Amendment's Due Process Clause for inadequate medical care provided to pretrial detainees. Our decision in *Miranda* hewed closely to *Kingsley v. Hendrickson*, where the Supreme Court held that the due process standard for assessing a pretrial detainee's claim of excessive force should be "objective not subjective." 135 S. Ct. 2466, 2472 (2015). A pretrial detainee "needed only to show that the defendant's conduct was *objectively* unreasonable," without any accompanying requirement to demonstrate, as would be the case in a claim brought under the Eighth Amendment's Cruel and Unusual Punishment Clause by an inmate serving a sentence, "that the defendant was *subjectively* aware that the amount of force being used was unreasonable." *Miranda*, 900 F.3d at 351 (citing *Kingsley*, 135 S. Ct. at 2472–73).

After *Miranda*, then, the controlling inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps. The first step, which focuses on the intentionality of the individual defendant's conduct, remains unchanged and "asks whether the medical defendants acted

purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case." *Id.* at 353. A showing of negligence or even gross negligence will not suffice. See *id.*; accord *Darnell v. Pineiro*, 849 F.3d 17, 35–36 (2d Cir. 2017) (concluding that "[a]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence").

At the second step, and now aligned with *Kingsley*, we ask whether the challenged conduct was objectively reasonable. See *Miranda*, 900 F.3d at 354. This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable.

B

With this framework in place, we turn first to Nurse Mongan's care for McCann and then to the claims against Ogle County officials Sheriff Beitel and Captain Kerwin. In doing so, we review the summary judgment record *de novo* and draw all inferences in McCann's favor. See *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011).

The record contains no evidence that Nurse Mongan purposely, knowingly, or recklessly administered dangerous dosages of methadone to McCann. To the contrary, she testified that she administered methadone to McCann in strict compliance with Dr. Cullinan's orders. And, while her efforts in caring for McCann, including by administering the prescribed dosages of methadone, were intentional and deliberate, nothing shows that she foresaw or ignored the potential

consequences of her actions—McCann's dying from the over-prescription of methadone.

Nor is there any evidence that Nurse Mongan's actions were objectively unreasonable—the second part of the requisite inquiry after *Miranda*. A licensed practical nurse like Mongan was able to rely on Dr. Cullinan to determine the proper dosage of methadone to treat the ongoing pain McCann was experiencing from his burn wounds. Hers was not the responsibility to second-guess Dr. Cullinan's medical judgment, especially when nothing about Dr. Cullinan's prescriptions or course of care more generally raised any obvious risks of harm for McCann. See *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) ("Although a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient."). Like the district court, we cannot say on the record before us that Nurse Mongan's administration of the methadone dosages prescribed by Dr. Cullinan was objectively unreasonable.

A broader look at the record shows that Mongan attended diligently and conscientiously to McCann's medical needs from the moment he arrived at the Ogle County facility. To be sure, Mongan harbored initial reservations as to the facility's ability to care for someone with severe burn wounds. Within a few days of McCann's arrival, however, those reservations abated and Mongan became comfortable with McCann being housed and cared for within the facility. The comfort came in no small part from her own course of action. She checked and documented McCann's condition every 5 to 15 minutes, while also regularly changing his bandages, bathing him, and

serving him meals. When off duty she asked her colleagues to call her day or night if McCann's condition worsened. She even voluntarily came in on a weekend to assist McCann with taking a shower. The district court stood on firm evidentiary ground when concluding that Nurse Mongan went out of her way to care for McCann.

McCann's estate urges a contrary conclusion by focusing more narrowly on Nurse Mongan's failure to take McCann's vital signs during the early morning hours of April 30, 2010—before she ultimately found him unresponsive and not breathing. The allegation on this score, the district court rightly recognized, sounds in negligence, which is insufficient to support a claim for inadequate medical care under the Fourteenth Amendment. See *Miranda*, 900 F.3d at 353; see also *Dixon v. County of Cook*, 819 F.3d 343, 350 (7th Cir. 2016) (explaining that a plaintiff must "prove facts from which something more than negligence or even medical malpractice can be inferred"). Even taking the allegation on its own terms, however, we cannot conclude that any failure to check McCann's vital signs was objectively unreasonable. That McCann appeared tired earlier that morning did not foretell the onset of respiratory failure or some other downturn that would end in his imminent death. Viewed objectively, Mongan's care for McCann was diligent and attentive—falling well short of violating McCann's due process rights.

Applying the same analysis to the Ogle County defendants, including the claims against Sheriff Beitel and Captain Kerwin, we reach the same conclusion. Neither individual was responsible for providing medical care to McCann. Rather, Sheriff Beitel and Captain Kerwin reasonably relied on Dr. Cullinan to determine the proper course of care for

McCann and themselves took no steps to contribute to or detract from the treatment McCann received. The law allowed these officials to rely on Dr. Cullinan in this way. See *Berry*, 604 F.3d at 440 (underscoring that the law "encourages non-medical security and administrative personnel … to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so"); see also *Miranda*, 900 F.3d at 343 (applying similar reasoning to reject allegations of inadequate medical care brought against non-medical jail officials). The district court, in short, was right to award summary judgment to these individual defendants.

C

What remains is the *Monell* claim for municipal liability against Ogle County. This claim includes the allegations McCann's estate advances against Sherriff Beitel and Captain Kerwin in their official capacities. See *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the [municipal] entity … for the real party in interest is the entity.").

A *Monell* claim subjects a local governing body like Ogle County to liability when an "official policy, widespread custom, or action by an official with policy-making authority" was the "'moving force' behind [a] constitutional injury." *Dixon*, 819 F.3d at 348 (quoting *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)); see also *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (articulating same standards for *Monell* liability).

McCann's estate asserts that Ogle County's decision to house McCann instead of transferring him to a hospital

reflected a policy that elevated cost savings over necessary medical care. This theory lacks support in the evidence adduced at summary judgment. There was no testimony or documentary evidence pointing to any such custom, practice, or policy—written or unwritten, formal or informal.

What the evidence shows is that Dr. Cullinan assessed McCann's condition and determined that the Ogle County facility had the capacity to attend to his ongoing medical needs. Put differently, the decision to house McCann within the Ogle County facility following his discharge from the local hospital reflected Dr. Cullinan's medical judgment, to which other county officials reasonably deferred. And at no point during McCann's detention did Sherriff Beitel, Captain Kerwin, or any other county official learn of deficiencies or concerns with the adequacy of the medical care provided to McCann. See *Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011) (explaining that "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands"). With the record here containing no such evidence, the district court properly concluded the *Monell* claim cannot succeed.

A final observation is warranted. In rejecting the *Monell* claim, the district court emphasized that McCann's tragic death resulted from Dr. Cullinan's over-prescription of methadone, not the decision to house him within the Ogle County facility or, for that matter, the care he received from Nurse Mongan and other staff members within the facility. This conclusion, too, finds sound support in the record.

For these reasons, we AFFIRM.