In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 18-1404

TRAVIS DELANEY WILLIAMS,

*Plaintiff-Appellant,*

*v.*

SIMEON ORTIZ, *et al.*,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 14-C-792 — **William C. Griesbach**, *Chief Judge.*

---

ARGUED MAY 21, 2019 — DECIDED AUGUST 26, 2019

---

Before FLAUM, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Travis Williams appeals the district court's grant of summary judgment in favor of several correctional employees. Because he failed to exhaust his administrative remedies and because the defendants did not provide him with objectively unreasonable medical care, we affirm.

## I. BACKGROUND

Travis Williams entered Racine County Jail in Wisconsin as a pre-trial detainee on May 8, 2013. He suffers from osteoarthritis, a condition for which he has received Social Security disability insurance since 1982. When Williams was admitted to the jail after his arrest, he had been recently using a walker and a cane to get around.

Although the Racine County Jail typically provides its inmates with a single mattress to sleep on at night, when the jail places inmates on disciplinary-segregation status it does not allow them to keep their mattresses in their cells during the daytime hours. In late 2013, the medical staff provided Williams with double mattresses to sleep on as an accommodation for his osteoarthritis. The jail allowed Williams to have double mattresses at night for sleeping, and allowed him to keep a single mattress in his cell during the day. By February 2014, the medical staff concluded that Williams's medical condition no longer required a second mattress, but the staff initially allowed him to keep his double mattresses.

Like other correctional facilities, the Racine County Jail has an administrative grievance and appeal procedure for its inmates. The procedures for appealing an adverse administrative action at the Racine County Jail are included in a jail handbook that is accessible in the jail's common areas. Essentially, the Racine County Jail follows a two-step appeal procedure. The jail handbook provides that the hearing supervisor may impose a sanction or penalty based on the findings of a disciplinary proceeding. The hearing supervisor can impose up to ten days of segregation for each rule violation. An inmate can execute his first appeal of the disciplinary finding and imposed sanctions to the Assistant Jail Administrator

(Lieutenant Bradley Friend) or to the Lieutenant in Charge of Jail Operations. Once the first appeal is returned, the inmate can execute his second appeal of an adverse finding to the Jail Administrator (Captain Douglas Wearing). The inmate must write this second appeal on an inmate request form and submit it to a staff member within 24 hours of the finding decision. The jail administrator's appeal decision is final.

Williams's troubles, at least as they are relevant to this case, began on June 3, 2014. That day he used the shower outside of the authorized timeframe and was consequently written up and placed on 24-hour lockdown. When a guard, Officer Robert Hernandez, handed him the write-up, Williams grew angry and threatened and yelled abusive insults at Hernandez. Hernandez wrote a disciplinary ticket that recommended twelve days of segregation for Williams. That same day, Doctor Simeon Ortiz examined Williams because he complained of pain when walking. Ortiz noted that Williams showed no signs of pain upon palpitation of his heels during examination and that he had joint mobility, but Ortiz also ordered an x-ray.

On June 5, the medical staff performed an x-ray, which revealed that Williams had bone spurs. Williams also found himself involved in other disciplinary incidents that day: Williams yelled verbally abusive comments at Hernandez in the morning. Later on, Officer Austin Isferding responded to Williams's complaint about his lunch. Williams claims he received a plate of stuffing that he described as "contaminated" with a long strand of hair and a "crunchy material." He ate all the other food on his plate and then complained about the contamination and asked for new food. Although Isferding provided a new serving of stuffing, Williams alleges that

Isferding just piled the new stuffing on top of the contaminated stuffing. Williams grew angry in reaction to this slight. Isferding consequently ordered Williams to lock up in his cell. As Isferding attempted to shut Williams's cell door, Williams shoved rolls of toilet paper in between the bars to prevent the door from closing. Then Williams attempted to tie the bars together with a bed sheet. Isferding wrote up Williams for the incident and recommended six days of segregation. On that day, after Williams was written up, he submitted a written grievance to Friend about the stuffing situation. Also on that day, Sergeant Patrick Noonan went to Williams's cell to conduct a hearing on Williams's conduct, but Williams claims that he was incapacitated by medication he took earlier in the day and that the hearing never occurred. In the following days, Williams submitted additional stuffing-situation grievances to Friend.

On June 8, the jail staff conducted a hearing to evaluate Williams's write ups for the incidents on June 3 and 5. Williams alleges that the hearing never happened, but the officers claim that Williams refused to participate. The hearing officer determined that Williams would serve twenty days of segregation as a result of his behavior during these incidents. Separately, the guards found Williams with contraband that day and wrote him up, recommending an additional three days in segregation.

Williams began serving his 20-day term in segregation the evening of June 8. The jail—pursuant to its standard segregation policy—allowed him to keep only one mattress for sleeping and no mattress during the daytime. Williams objected that he needed the mattress on account of his osteoarthritis.

Over the weeks that followed, the jail's medical staff continued to address Williams's medical complaints and Williams continued to correspond with Lieutenant Friend and Captain Wearing concerning his grievances. We provide a brief overview of these events to better illustrate the grounds of the parties' arguments.

On June 9, Williams submitted a third grievance to Friend about the stuffing situation. The district court determined that this was a separate, stand-alone complaint. Williams argues on appeal that this grievance was an appeal of the segregation term imposed on him the day before.

On June 10, Williams wrote a grievance directly to Wearing, complaining that the disciplinary hearing was conducted when he was medicated on mind-altering drugs.

On June 12, Doctor Ortiz examined Williams for hip pain and to evaluate whether Williams needed his requested mattress accommodation. Ortiz determined that Williams's condition did not require a mattress accommodation at that time. That same day, Williams yelled sexually explicit remarks at and exposed himself to Hernandez. Hernandez wrote Williams up and recommended six days of segregation.

On June 13, Williams wrote to Friend and claimed that Ortiz had ordered him a mattress. Williams iterated his desire for a mattress accommodation.

On June 15, the hearing officer attempted to have an administrative hearing on the incidents that occurred on June 8 and 12. Williams did not participate in the hearing and the hearing officer imposed an additional nine days of segregation. Williams also wrote a grievance to Friend that day, complaining that his osteoarthritis required a mattress.

On June 16, Friend replied to Williams's June 9 appeal regarding the stuffing situation. That day Wearing also replied to Williams's June 10 grievance, which concerned his complaint that he was deprived of a hearing.

On June 17, Friend responded to Williams's June 13 and 15 grievances. Friend advised Williams that the medical staff informed him that they had not ordered a mattress for Williams. Further, Friend told Williams that the nursing staff informed him that there was no medical reason for a mattress accommodation. But Friend also advised Williams that he would be provided a mattress if the medical staff authorized one.

On June 18, Williams appealed to Wearing the nine-day discipline imposed on June 15. The grievance almost exclusively discusses the nine additional days of disciplinary time, but Williams closed by stating, "my due process has been violated twice now for a total of a[n] unjust 35 days segregation time." On June 20, Williams appealed Friend's June 17 denial to Wearing, who replied to it on June 26.

On June 20th and 26, Wearing responded to grievances that Williams sent to him about the mattress, advising him that medical issues should be filed as requests with the medical staff. On July 1, Ortiz examined Williams for pain reported in his left arm and shin. On July 9, a nurse practitioner examined Williams for leg pain, but found that he had no swelling, bruising, or tenderness.

On July 10, Ortiz examined Williams again after he complained of swelling, but Ortiz found no evidence of swelling and noted that Williams could stand, walk, and move around

without issue. As a result, Ortiz did not believe that Williams needed a mattress as a medical accommodation.

Williams filed suit, *pro se*, in the Eastern District of Wisconsin. The district court screened Williams's complaint to determine if he raised any viable issues for trial. The court determined that four of Williams's claims against six defendants could proceed. The court allowed Williams to bring 1) a claim alleging that Officer Isferding retaliated against him by refusing to provide him with proper hygiene kits because Williams had filed grievances, 2) Fourteenth Amendment claims against Officers Isferding and Hernandez alleging harassment, 3) a Fourteenth Amendment claim against Officers Isferding and Hernandez for their alleged conspiracy to fabricate disciplinary tickets to keep him locked up and to deprive him of the jail's administrative process, 4) a deliberate indifference claim against Lieutenant Friend, Doctor Ortiz, Nurse Olstinske, and Nurse Coe.

The parties eventually filed cross-motions for summary judgment. The case was later reassigned to another district court judge, who granted summary judgment—in two separate orders—for all defendants and denied summary judgment for Williams. Relevant to this appeal, in the first order, the court granted summary judgment on Williams's deliberate indifference claim for defendants Dr. Ortiz, Lieutenant Friend, Nurse Olstinske, and Nurse Coe. In the second order, the court granted summary judgment for Officers Hernandez and Isferding on Williams's Fourteenth Amendment Due Process claims because the court determined Williams failed to exhaust his administrative remedies.

## II. ANALYSIS

Williams appeals the district court's grant of summary judgment in favor of all defendants. First, he argues that the district court erred when it determined that he failed to exhaust his administrative remedies for his claims against Officers Hernandez and Isferding. Second, Williams argues that the district court erred by granting summary judgment for Dr. Ortiz, Lieutenant Friend, Nurse Olstinske, and Nurse Coe on his deliberate indifference claims.

Summary judgment is appropriate only when there is no dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review *de novo* a dismissal for failure to exhaust, construing the facts in the light most favorable to the non-moving party. *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018) (citing *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016)). However, "[e]ven on summary judgment, district courts are not required to draw every requested inference; they must only draw reasonable ones that are supported by the record." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citing *Omosegbon v. Wells*, 335 F.3d 668, 677 (7th Cir. 2003)).

### A. Williams Failed to Exhaust His Administrative Remedies

Because exhaustion is an affirmative defense, the defendants bear the burden to show Williams's failure to exhaust. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018) (citing *Pyles*, 829 F.3d at 864). Because Williams was incarcerated when he filed this action, his claims are governed by the Prison Litigation Reform Act ("PLRA"). Under the PLRA, a prisoner must exhaust "such administrative remedies as are available" before bringing a suit "with respect to prison conditions under

section 1983 … or any other federal law." 42 U.S.C. § 1997e(a). The exhaustion requirement is interpreted strictly; thus, a "prisoner must comply with the specific procedures and deadlines established by the prison's policy." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). Unexhausted claims are procedurally barred from consideration. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Pyles*, 829 F.3d at 864.

The district court determined that Williams failed to exhaust his administrative remedies because he never successfully appealed the discipline imposed on him through the Jail's grievance process. As we explained above, to successfully exhaust his administrative remedies under the jail's rulebook, Williams needed to first appeal an adverse disciplinary finding and the imposed sanctions to the assistant jail administrator. If the first appeal was unsuccessful, then Williams had to submit a written appeal to the jail administrator within 24 hours. The district court concluded that Williams never successfully completed a timely first appeal to Lieutenant Friend, and that he improperly attempted to bypass this step by sending grievances directly to Captain Wearing.

Williams argues that the district court misinterpreted the record concerning his grievances and erred as a result. Specifically, Williams believes that the district court erroneously concluded that his June 9 appeal related back to the disciplinary hearing that Sergeant Noonan attempted to conduct on June 5. Because the jail rulebook requires that all adverse disciplinary determinations be appealed in writing within 24 hours, the district court determined that Williams's June 9 appeal to Friend was untimely. But on appeal Williams urges that his disciplinary segregation was not actually imposed on

him until June 8, making his June 9 appeal of that imposed
discipline timely.

Without conceding that Williams ever successfully com-
pleted the first step in the process, the defendants argue that
even if Williams's characterization of the first appeal is cor-
rect, he still failed to exhaust his administrative remedies. The
defendants reason that Williams never successfully com-
pleted the second step in the appeal process—an appeal to
Wearing within twenty-four hours of the first appeal's rejec-
tion.

We find the defendants' argument persuasive. Summary
judgment for the defendants was appropriate because Wil-
liams did not file a timely appeal and, in fact, seemed to ap-
peal regarding discipline imposed much earlier.   First, even
accepting that Williams successfully submitted his appeal of
the discipline to Friend on June 9, he received Friend's rejec-
tion of his appeal on June 16. The record clearly shows that
Williams submitted his only potentially relevant appeal to
Wearing on June 18—a day later than required under the jail's
rulebook. Second, as noted above, the June 18 appeal appears
to relate to a different set of imposed discipline, not to the dis-
cipline imposed on June 8. We therefore conclude that Wil-
liams never made a timely appeal to Wearing and accordingly
never exhausted his administrative remedies.

Williams alternatively argues that the appeal process was
not available to him and the district court therefore errantly
granted summary judgment. Williams argues that the jail ef-
fectively deprived him of access to the administrative process,
because it placed him in segregation almost immediately after
the alleged violation occurred, leaving him almost no time to
file a grievance or appeal. He relies on cases where we have

held that defendants were deprived of due process when the administrative remedy process was not available to them or when the prison made the process virtually impossible. *See, e.g.*, *King v. McCarty*, 781 F.3d 889, 895 (7th Cir. 2015). Even though Williams makes this argument, he fails to explain why he could not still take advantage of the administrative process after he had been placed in segregation. In fact, he continued to file grievances during his segregation. Accordingly, we conclude that the district court correctly granted summary judgment for failure to exhaust remedies.

*B. The Medical Staff's Denial of Williams's Requested Mattress Accommodation Was Not Objectively Unreasonable*

Williams also charges that the district court erred by granting summary judgment for Dr. Ortiz, Lieutenant Friend, and Nurse Olstinke. The district court issued its order and judgment before we issued our decision in *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018). In *Miranda*, we distinguished § 1983 claims raised by pre-trial detainees under the Fourteenth Amendment from convicted prisoners' claims raised under the Eighth Amendment. *Id.* at 350. We concluded that pre-trial detainees must show only that the defendants' challenged conduct was "objectively unreasonable." *Id*. at 351.

Under the *Miranda* standard, we apply a two-part test when "assessing a due process challenge to a pretrial detainee's medical care[.]" *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018). The first step "'asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [Williams's] case.'" *Id*. (quoting *Miranda*, 900 F.3d at 353). Negligence or gross negligence does not meet this standard. *McCann*, 909 F.3d at 886. For the second step, "we

ask whether the challenged conduct was objectively reasonable." *Id*. "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id*. Said more succinctly, Williams must demonstrate that genuine issues of material fact exist on two questions: (1) whether he suffered from an objectively serious medical condition and (2) whether the medical staff's response to it was objectively unreasonable. *Id*.

In his reply brief, Williams refocuses his arguments under the *Miranda* standard and states that it was objectively unreasonable for the defendants to make a man with osteoarthritis sit in a cell for 12 hours a day without a mattress. He maintains that, setting aside whether it was unreasonable to deny the extra mattress for sleeping, the record provides no evidence that Doctor Ortiz ever determined that Williams did not medically require a single mattress during the daytime hours. Williams's argument effectively centers on the theory that it was impossible for Ortiz, Olstinke, and Friend to rely on a medical judgment that Ortiz never actually made. Williams also claims that the non-medical jail staff inappropriately influenced Ortiz's decisions.

For the sake of argument, we set aside the issue of whether Williams showed that he suffered from an objectively serious medical condition. We nonetheless believe Williams construes the record too narrowly and—looking at the totality of the facts and circumstances—we cannot agree that the defendants provided Williams with objectively unreasonable medical treatment.

The record shows that the medical staff diligently attended to Williams's needs. They examined Williams regularly and promptly to address his complaints about pain in his joints and feet. And these examinations never revealed swelling or bruising in Williams's legs or joints. Nor did Williams report tenderness in his calves during examination. Additionally, Ortiz noted in his examination reports that Williams was able to walk, to stand, and to extend and move his joints. By examining Williams and ordering x-ray testing, Ortiz discovered Williams's modest bone spurs and began a treatment plan. Ortiz initially prescribed over-the-counter medicines to treat Williams's pain. The record also reflects that Ortiz adjusted his treatment plan in response to Williams's complaints: he added other pain medication when Williams complained of lingering arthritic pain. He also prescribed a knee support brace and Williams received a bandage wrap to help alleviate joint pain. The medical staff also encouraged Williams to engage in physical exercise as a proactive measure to mitigate his chronic pain. Looking at Williams's medical records, we cannot agree that the medical staff provided Williams objectively unreasonable care.

We believe the record provides no support for Williams's argument that Ortiz never made a medical decision about whether he required a single mattress during the daytime hours. Williams relies on language in Ortiz's statement explaining that he never determined that Williams required an "extra mattress." Williams argues this shows that Ortiz only deemed an extra mattress during the nighttime hours medically unnecessary. But as the defendants point out, a daytime mattress while in segregation would have, in fact, been an ex-

tra mattress. And Williams's repeated grievances and interactions with medical staff show that he made his desire for a mattress known.

We also find no support in the record for Williams's claim that Ortiz's medical judgment was compromised or inappropriately influenced by non-medical jail staff. To the contrary, Ortiz emphasized that he exercised his medical judgment in all cases, and he wrote in a statement that in the wake of the Williams's many medical examinations and repeated requests for an extra mattress, he and other medical staff members came to believe that Williams was likely trying to take advantage of the medical system to garner special privileges.

Certainly, Williams disagreed with the course of treatment chosen by the jail's medical staff. But just because the staff declined to provide him with his desired prescription pain medicine or the comfort of an extra mattress does not mean that the course of treatment was objectively unreasonable. *Cf. Johnson v. Doughty*, 433 F.3d 1001, 1012–13 (7th Cir. 2006) ("Mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient [to show deliberate indifference]."). Indeed, the conclusion that Williams did not require a special mattress accommodation was later validated outside of the Racine County Jail: the Wisconsin Department of Corrections similarly denied his request for a thick mattress after it conducted its own medical examination. Williams failed to demonstrate a genuine issue of fact regarding whether, despite the persistent and reasoned medical attention given to him, he was provided with objectively unreasonable medical care.

### III. CONCLUSION

Williams failed to exhaust his administrative remedies because he never completed the necessary second internal appeal to Captain Wearing. As for his claim that the jail's medical staff and guards treated him in an objectively unreasonable manner, the record does not support Williams's arguments. We therefore AFFIRM the judgment of the district court.