NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 28, 2021[*]
Decided June 14, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1973

| | |
|---|---|
| GREGORY A. WHITE, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 17-4234-CSB |
| GREGG SCOTT, et al., *Defendants-Appellees*. | Colin S. Bruce, *Judge*. |

**O R D E R**

Gregory White is confined at the Rushville Treatment and Detention Facility under the Sexually Violent Persons Commitment Act, 725 ILCS 207/1. He sued officials there, asserting that they had deprived him of liberty without due process in two ways: first, by requiring him to wear black-box handcuffs when he left the facility; and second, by requiring that an escort accompany him within the facility. The district court entered

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

summary judgment for the officials on his claims, reasoning that White did not suffer a loss of liberty from these measures. We affirm.

Starting in 2001, White had to wear black-box handcuffs on trips outside of Rushville. The "black box" is a rectangular device placed between hands and over handcuffs to block escape. When White first arrived at Rushville, the institutional policy mandated these measures for all residents during trips outside the facility. Rushville loosened that rule in 2004 to require back-box restraints only for residents who committed major rule violations or posed a security risk. Security staff continued using the boxes on White because he violated major rules, through actions such as fighting residents and staff. According to White, the box caused his wrists, hands, and arms to swell, bleed, and become numb. The escort rule arose from Rushville's decision in 2008 that staff must accompany White within the facility whenever he leaves his housing unit. He asserts that this "escort status" prevents him from working in off-unit jobs.

Using Rushville's internal procedures, White sought relief from these two restrictions. Grievance officers explained that the measures were needed because he kept violating rules, and when he complained of pain from the boxes, they advised him to contact his doctors for treatment. Doctors provided him ice, pain medication, and bilateral wrist supports. Although he did not break any "major" rules in 2010, 2012, or after 2013, the extra security measures remained in place until 2017, based on recommendations from Rushville's Risk Assessment Team.

In this suit, White alleges that Rushville officials violated his constitutional rights by continually requiring the black box and an escort without regular hearings to determine if he was an escape risk. See 42 U.S.C. § 1983. He added that the black box produced "severe unwanted pain," cuts, bruises, and led to carpel-tunnel surgery. *Id.* After he filed the complaint, he requested recruited counsel. The district court screened the complaint, see 28 U.S.C. § 1915(e)(2), and allowed him to proceed on a due-process theory. The court did not recruit a lawyer because White failed to show that he had tried to retain one on his own.

After contentious discovery, the case ended at summary judgment. White repeatedly moved to compel responses to his discovery requests and to sanction the defendants for objecting to his requests. The district court ruled that the defendants adequately replied to discovery and that their objections to his requests were not sanctionable. White also unsuccessfully renewed his request for counsel several times. Yet he never showed that he had sought counsel on his own, and the court explained that White was able to litigate the suit because he had filed clear pleadings, he had litigated many other suits, his claims were not novel, and they did not require expert

testimony. After discovery, the court entered summary judgment for the defendants, reasoning that White had no liberty interest in freedom from the black box or an escort, and so no due-process violation occurred.

On appeal, White pursues his due-process argument. He contends that the officials violated his rights by mandating that he wear black-box handcuffs when he left the facility and that he receive an escort when he moved within the facility, without periodically determining that these constraints were needed.

The district court correctly entered summary judgment on this claim. Officials do not violate a civil detainee's right to due process unless they deprive the detainee of a liberty interest. See *Miller v. Dobier*, 634 F.3d 412, 414–15 (7th Cir. 2011). Restrictions that do not "substantially worsen the conditions of confinement" do not interfere with a liberty interest. *Id.*; see also *Sandin v. Conner*, 515 U.S. 472, 485–86 (1995).

The restrictions here did not deprive White of liberty. Black-box cuffs do not in themselves substantially worsen the conditions of detention. See *Miller*, 634 F.3d at 415; *Thielman v. Leean*, 282 F.3d 478, 480, 484 (7th Cir. 2002) (no liberty interest to be free from the black box during transport). White argues that the boxes led to pain, swelling, bleeding, and surgery. But even if we assume that the boxes caused those problems, no evidence suggests that, after White sought medical help, those difficulties persisted. Without such evidence, he cannot show that the boxes materially worsened his detention. Likewise, the escort status did not substantially worsen his detention. For one thing, it did not prevent him from leaving his cell. See *Miller*, 634 F.3d at 415 (no loss of liberty, even though civil detainee's mobility within facility was reduced, because detainee could still leave his cell). Second, although White replies that he could not get a job outside of his housing unit, he had no liberty interest in the privilege of a job at the facility. See *id.* (no liberty interest in loss of privileges); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) (en banc). Finally, he could still work within his housing unit.

White next generally contends that, in entering summary judgment, the district court neglected his separate claim that Rushville officials unlawfully continued using the boxes even after he complained to them that the boxes hurt him. The district court did overlook this claim, but the parties litigated it, and so we may address it. See *Richards v. U.S. Steel*, 869 F.3d 557, 562 (7th Cir. 2017). It is not clear whether White wants us to assess this claim under the deliberate-indifference standard that governs prisoners or the due-process standard that governs pre-trial detainees. See *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (describing both standards). (The question arises because Rushville is a "treatment and detention facility" within Illinois's

Department of Human Services, not a "correctional center" under the Illinois Department of Corrections. See Ill. Dept. of Human Servs., Div. of Mental Health, Treatment and Detention Facility, https://www.dhs.state.il.us/page.aspx?item=87812; Ill. Dept. of Corr., Facilities; at https://www2.illinois.gov/idoc/facilities/pages/allfacilities.aspx.) But even under the latter standard, which is more generous to White, he loses. To survive summary judgment under that standard, White must first show the Rushville officials ignored his complaints. *Id.* at 353. But the undisputed record shows that when he complained to officials, they advised him to seek medical treatment. Without any evidence that they knew that their advice was useless, their response was reasonable. See *McCann v. Ogle Cnty.*, 909 F.3d 881, 888 (7th Cir. 2018).

We can quickly dispatch White's remaining arguments. He contends that the district court wrongly dismissed at screening his argument that other detainees did not have to wear black-box restraints for as long as he did. If he is trying to raise an equal-protection claim, it fails, because White did not allege that the defendants believed that the non-boxed detainees threatened security to the same degree as he did. See *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 601 (7th Cir. 2016). He further asserts that the district court improperly denied his requests for recruited counsel. But he did not show that he attempted to secure counsel on his own, and so the denial was a permissible exercise of discretion. See *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc). White also contests the court's refusal to compel and sanction the defendants for their responses to discovery. As the court reasonably explained, however, by raising plausible objections, the defendants did not engage in sanctionable behavior, and in any case, White does not explain how the denial of his motions to compel discovery prejudiced him. See *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013). We have considered his other arguments, and none has merit.

AFFIRMED